## PARKER ET AL. *v.* HUMFLEET ET AL.

[No. 9,398. Filed April 19, 1916. Rehearing denied June 27, 1916. Transfer denied December 4, 1916.]

SCHOOLS AND SCHOOL DISTRICTS.—*Joint Elementary and High School.—Relocation.—Township Trustee.—Powers.—Statute.* — It is within the discretionary power of a township trustee to change the site of a joint elementary and high-school building by constructing another elsewhere, and injunction will not issue to restrain him from so doing where it does not appear that the trustee has exceeded the scope of his discretionary authority and there is no charge of bad faith or fraud, §6417 Burns 1914 *et seq.*, Acts 1893 p. 17, which provides that a petition for the relocation of a school building shall be signed by a majority of the patrons of the school, applying only to the relocation of district schools, and it is not necessary for a majority of the patrons of a high school to join with a trustee in a petition for its relocation.

From Shelby Circuit Court; *Alonzo Blair,* Judge.

Action by George W. Parker and others against William Humfleet, as trustee of Buck Creek township, Hancock county, and others. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*R. L. Mason, Cook & Walker, Tindall & Tindall* and *Hord & Adams,* for appellants.

*L. Ert Slack, Isaac Carter* and *Samuel J. Offutt,* for appellees.

MORAN, J.—Appellants as taxpayers of Buck Creek township, Hancock county, Indiana, sought to enjoin appellees, the trustee and advisory board of said township, and Howard C. Elliot, the contractor, from carrying out a contract for the construction of a school building in the township and the sale of bonds to defray the cost of the same. A demurrer was sustained to the complaint, and upon appellant's failure to plead further, judgment was rendered against them, from which an appeal has been prosecuted, presenting for consideration the sufficiency of the complaint to withstand a demurrer.

The complaint discloses: that appellants, three in number, were taxpayers of Buck Creek school township, and that the trustee and advisory board entered into a contract in violation of law with Howard C. Elliot to construct a school building; that, in 1899, a joint elementary and high school building was erected in district No. 5 and paid for by the taxpayers of the township, and since that time a noncommissioned high school has been maintained; that $5,000 was expended over and above what it would have cost to construct the building solely for the purpose of holding an elementary district school; that on March 2, 1914, eighteen persons, representing themselves as residents and patrons of the district, and the trustee, filed a petition with the superintendent of schools of Hancock county for an order authorizing the trustee to relocate the district school building on another tract of real estate, and pursuant thereto the superintendent made the following order:

"And it is now therefore considered and ordered by the county superintendent of schools and the said trustee of Buck Creek township is hereby ordered and authorized by the said county superintendent to change

the site and location of said schoolhouse in said District No. 5 and remove said schoolhouse to the new site. Dated this 2nd day of April, 1914, George J. Richmond, Co. Supt.''

That the trustee and advisory board prepared plans for the construction of the school building for the new site and the advisory board appropriated $35,000 for erecting and fitting the building to be used as a district and township high school, $20,000 of which was necessary to make the building suitable for high-school purposes; that bids were advertised for the construction, and on the day fixed for receiving the same Howard C. Elliot was awarded the contract for $34,470.90, and the board authorized the trustee to issue and sell bonds to raise funds with which to construct the same, and the trustee issued bonds and was threatening to sell the same when suit was filed. It is further disclosed that at the time of the filing of the petition with the county superintendent, there were 150 patrons of the high school who had children enumerated for school purposes that were entitled to attend high school, and the trustee was attempting to abandon the high school and relocate the same; that the petition was not signed by a majority of the heads of families having children enumerated for school purpose in the township, and the petition filed did not request, nor did the order of the county superintendent authorize, an abandonment or a relocation of the high school; that no authority existed to construct and maintain the building upon the new site. Upon the facts pleaded, of which the foregoing is the substance, injunctive relief is demanded.

The objections urged to the complaint by appellees may be classified under two subdivisions: First, the petition addressed to the county superintendent, as disclosed by the complaint, was not signed by a majority of the patrons, guardians and heads of families having charge of all persons of school age in the township who would be affected

by the relocation; that its being signed by a majority of the patrons. of district No. 5 was not sufficient; secondly, that the removal of the district school building only was asked by the petition, and not the removal of the site of the township high school.

To these objections appellants answer that the change of site of a high school is for the township trustee alone, subject to an appeal to the county superintendent of schools, and that the statute authorizing a petition to the county superintendent in reference to a relocation of a school applies to the change of site of a district school, which requires only a majority of the patrons of the district.

Thus the controversy is narrowed down to the legality of the action taken by the school officers in attempting to relocate and build a high-school building as a part of, and in connection with, the graded-school building. Numerous sections of the statute are referred to by the parties in support of their respective contentions, and which are discussed in so far as they throw light on the question involved.

Under §6410 Burns 1914, Acts 1899 p. 424, it is made the duty of the township trustee to take charge of the educational affairs of the township; and, among other duties enumerated by this section, the trustee may establish and maintain, as near the center of the township as seems wise, at least one separate graded high school, to which shall be admitted all pupils who are sufficiently advanced. But as a prerequisite to the exercising of authority in this respect by the trustee, there must be within the township at least twenty-five common-school graduates of school age. Instead, however, of building a separate school building, the statute provides a method of transferring the pupils to another school corporation where they may receive a high-school education; and the statute likewise provides that two or more trustees may establish a joint graded high school in lieu of a separate graded high school.

By §1 of an act of 1913, Acts 1913 p. 331, §6584a *et seq.*
Burns 1914, it is provided that a township having taxable
property of $600,000, with no high school, and having eight
or more graduates of the township elementary school for
two years last preceding, the township trustee may establish
a high school, or a joint high school and elementary school;
and, when a majority of the persons having charge of
children enumerated for school purposes petition the trustee
to establish and maintain such school, the trustee shall
establish the same. Section 2 provides that where there
is no high school within three miles of any boundary line
of such township, and there have been eight or more
graduates of the elementary schools, as aforesaid, the trustee
shall establish a high school. Section 3 provides that the
location shall be determined by the trustee, except in the
event that ten persons, having charge of children who are
graduates of the elementary schools and enumerated for
school purposes, may petition for a location other than the
one determined by the trustee, whereupon an appeal shall
be taken to the county superintendent of schools, whose
decision shall be final.

This enactment, as well as the prior act (Acts 1899 p.
424, *supra*), deals with the construction of high-school
buildings and the maintaining of high schools. Neither of
the acts deal with the relocation of a high school already
established. Both enactments, in a general way, disclose
the duties, scope and discretionary powers of the trustee in
relation to the educational affairs of his township and the
maintaining of high-school facilities, and in this respect only
are the enactments instructive as to the question involved.

Section 6417 *et seq.* Burns 1914, Acts 1893 p. 17, pro-
vides that whenever it becomes necessary to re-establish the
site of any school building, the trustee shall present to the
county superintendent a petition setting forth the place
to where it is desired to change the school building, together
with reasons for such change, and shall procure an order

from the county superintendent to relocate the school building. The petition shall be signed by the trustee and the majority of the patrons of the school where said building is located; proofs of notice by posting for twenty days prior to the day set for the hearing being required.

It is argued by appellants that §6417, *supra,* which provides for the relocation of the site of a school building, has reference to any and all schools and calls for a majority of all affected, the same as where a relocation is sought in the district; that otherwise those interested would have no voice in the relocation. To further elucidate, appellant's position is that a majority of the patrons of the township affected by a relocation of a high school must join in a petition asking for such relocation. As we have seen, §6417, *supra,* contains the language "any school" and "a majority of the patrons" of the school, and upon the language thus used appellants lay much stress and insist that when taken in connection with the various statutes and the entire subject-matter covered, it can be fairly implied to mean any school within the general supervision of the township trustee, which would include the township high school.

On the part of appellees, this language, it is contended, means any district school, inasmuch as the statute using the same was enacted several years prior to the enactment of the statute creating the township high school.

By §6410, *supra,* there is no initial step required of the taxpayers or patrons of the township to be taken by petition to invoke the authority of the trustee to erect a building for high school purposes. The condition prerequisite thereto is that there be twenty-five common-school graduates of school age in the township; and by the acts of 1913, *supra,* the trustee may, in townships having taxable property to the amount of $600,000, establish a high school, if there are eight or more graduates of the township elementary schools residing within the township, etc. Here we have

instances under the statute where, in the construction of high schools, the authority of the trustee to so construct does not depend upon any affirmative action being taken by the taxpayers of the township, which, in a measure, argues against appellants' contention that the whole scope and tenor of the statutes under consideration fairly implies that the voice of the patrons or taxpayers must first be heard before the trustee proceeds in the matter.

In *Kessler, Trustee,* v. *State, ex rel.* (1896), 146 Ind. 221, 45 N. E. 102, cited by appellants as supporting their contention, the court makes use of the following language, in construing §6417, *supra:* ''The language of the act shows that the intention was to give the majority of the patrons of the school a controlling voice in the removal of their school from the place where it had once been located. The judgment of the trustee and that of the county superintendent must also be united to that of the majority of the school patrons before such removal shall be allowed. * * * The legislature saw fit to take this matter from the arbitrary control of the school officers and to restore it to those to whom it originally belonged, the people of the school district itself.'' The facts in this case, as well as the conclusions reached by the court, clearly disclose that the decision has reference only to the relocation of a district school.

In *Carnahan, Trustee,* v. *State, ex rel.* (1900), 155 Ind. 156, 57 N. E. 717, also relied upon by appellant, it was held that, prior to the enactment of the statute under consideration, the trustee had the arbitrary power to relocate a school and the only authority reserved in the patrons of the district was advisory, but that by the Acts of 1893 p. 17, *supra,* the action of a majority of the patrons, township trustee and the county superintendent was necessary for the relocation of a school. This decision likewise deals with a district school. There is nothing in either the Kessler or Carnahan cases, *supra,* that supports appellants'

contention that §6417, *supra,* is subject to the construction that the trustee cannot act in the matter of the relocation of a township high school until a majority of those having children eligible to attend petition for such change of location.

In *State, ex rel.* v. *Wilson, Trustee* (1897), 149 Ind. 253, 48 N. E. 1030, in reference to §6417, *supra,* it was said: "It is clear from an examination of the provisions of the act cited, that it only applies when it is proposed to change the site of a schoolhouse from one point to another in the same school district."

In *Willan* v. *Richardson* (1912), 51 Ind. App. 102, 98 N. E. 1094, involving the relocation of a school by the township trustee, it was held by this court that where patrons were referred to in §6417, *supra,* reference was to patrons of the district schools; that there was no statute which referred to patrons of a high school; and this was in accord with the holding of the Attorney-General of the State, as the opinion discloses.

A township trustee, while not possessing exclusive control in many respects, has the general control and supervision of the educational affairs and the management of the schools of his township. This is true as to the construction, location, removal, abandonment, consolidation and kindred subjects falling within this general duty.

The graded school and the high school under consideration were conducted for several years in the same building. The relocation of the building contemplated will continue this system, one building serving both purposes. There is no contention that it will not be to the best interests of the patrons of the district and the public to relocate the graded school, for as to this we have seen there is no objection, only in so far as the relief sought, if granted, would necessarily operate to defeat both the building of the graded school and the high school. It does not appear that the trustee has exceeded the scope of his discretionary authority, and no bad faith or fraud is charged against appellees, and

the allegations of the complaint, when applied to the law, disclose that no statute was violated nor was there an infringement of any legal rights of appellants.

Appellants, apparently with much feeling, argue that if school officers at will may expend large sums of money, as here attempted, the way is clear to a dissipation of public funds without the sanction or approval of the taxpayers. This would be weighty argument to address to the law-making body of the state if there is a lack of restraint upon public officers that have the handling and expenditure of public funds, as officers possessed with authority to expend public funds should do so economically, keeping in view the necessity for so doing; but relief in this respect cannot come through the courts.

Finding no error that calls for a reversal of the judgment, the judgment is affirmed.

NOTE.—Reported in 112 N. E. 253. See 36 L. R. A. (N. S.) 16; 35 Cyc 936.